UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

WATERSHAPE, INC. d/b/a WATERSHAPE UNIVERSITY,

Plaintiff(s),

v.

THE ASSOCIATION OF POOL AND SPA PROFESSIONALS d/b/a POOL & HOT TUB ALLIANCE; POOL & HOT TUB FOUNDATION d/b/a GENESIS 3, INC., d/b/a Genesis; and DOES 1-50;

Defendant(s).

Case No. 2:23-cv-00466-JCM-EJY

ORDER

Presently before the court is the defendants' (The Association of Pool & Spa Professionals and the Pool & Hot Tub Foundation) motion to dismiss and compel arbitration. (ECF No. 7). The plaintiff (Watershape, Inc.) filed a response (ECF No. 11), to which the defendants replied (ECF No. 14). For the reasons stated below, the court GRANTS the motion.

I. **Background**

This is an ownership dispute over intellectual property. The parties are companies within the pool and spa industry with complicated relationships. The defendants are two separate companies that operate together under the "GENESIS" tradename as a "member-based umbrella organization." (ECF No. 7, at 2). Plaintiff Watershape's founders, William Drakeley and David Peterson, were at one time employed by GENESIS's predecessors. (ECF No. 1, at 3–4). The court refers to the defendants collectively as "GENESIS."

Watershape alleges that it owns the copyright to the materials published in two instruction manuals, "Construction 2111: Basic Pool Construction" and "Engineering 211: Basic Fluid Engineering." (ECF No. 1, at 14–15). According to Watershape, GENESIS infringed on

James C. Mahan
U.S. District Judge

its copyright by using materials found in Construction 2111 and Engineering 211 in GENESIS instruction manuals. (*Id.*).

GENESIS moved this court to compel arbitration, arguing that this dispute is subject to the arbitration clause found in a consulting agreement signed between Wathershape's founders and GENESIS[1] in 2017 (hereinafter, the "Agreement"). (ECF No. 7, at 3, 11–12; *see also* ECF Nos. 7-1, 7-2). The Agreement has an "Intellectual Property" clause stipulating that any "work product" created by Drakeley or Peterson "shall be the sole and exclusive property" of GENESIS. (ECF No. 7-2, at 2).

GENESIS informs the court that all the alleged infringing material Watershape identifies in its complaint appeared in a GENESIS textbook published in 2018—*before* Watershape registered the copyrights for Construction 2111 and Engineering 211 in 2022. (ECF No. 7, at 4–10; ECF Ns. 1-4, 1-6). GENESIS maintains that Peterson created and developed content for the GENESIS textbook while the Agreement was in place, and Watershape does not dispute this. (*Id.*, at 3, 11; ECF No. 11, at 5).

GENESIS thus argues that Watershape's claims are subject to arbitration, according to the arbitration clause found in the Agreement, because whether GENESIS or Watershape is the copyright owner is determined by the Agreement. (*Id.* at 15–16). Watershape does not dispute that it is bound by the arbitration clause found in the Agreement. (*Id.* at 14; *see also* ECF No. 11, at 6). It disputes only the scope of that arbitration clause and argues that the present dispute is not subject to arbitration. (*See generally* ECF No. 11).

II.   **Legal Standard**

The Federal Arbitration Act ("FAA") provides for the enforcement of arbitration agreements in any contract involving interstate commerce. 9 U.S.C. §§ 1–2; *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." *Id.* § 2. (emphasis added). The Act further dictates that a party to

---

[1] The company that entered into the Agreement with Drakeley and Peterson is defendant Pool & Hot Tub Foundation when it was called the "National Swimming Pool Foundation." (ECF No. 7-2, at 5; ECF No. 7, at 2).

an arbitration agreement may invoke his or her rights under the Act by petitioning the district court "for an order directing that such arbitration proceed in the manner provided for" in the agreement. *Id.* § 4.

When addressing a motion to compel arbitration, the court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 4; *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719–20 (9th Cir. 1999)). While state law applies to the question of whether a valid agreement to arbitrate exists, federal law governs the determination of the arbitration agreement's scope. *Tracer Rsch. Corp. v. Nat'l Env't Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994) ("Although the contract provides that Arizona law will govern the contract's construction, the scope of the arbitration clause is governed by federal law."); *see also Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 743 (9th Cir. 2014).

The court resolves all ambiguities as to the *scope* of arbitration in favor of arbitration. *Goldman, Sachs & Co*, 747 F.3d at 742. "A court will not ordinarily except a controversy from coverage of a valid arbitration clause unless it may be said with positive assurance that the arbitration clause is not susceptible [to] an interpretation that covers the asserted dispute." *Bosinger v. Phillips Plastics Corp.*, 57 F. Supp. 2d 986, 990 (S.D. Cal. June 29, 1999) (quoting *Marchese v. Shearson Hayden Stone, Inc.*, 734 F.2d 414, 419 (9th Cir. 1984)) (internal quotations omitted).

If the court determines that the agreement to arbitrate encompasses the parties' dispute, the court must "rigorously" enforce the agreement to arbitrate. *Simula, Inc*, 175 F.3d at 719. This is true even if the agreement implicates claims arising under federal statutes or would result in inefficiency. *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 698 (9th Cir.1986).

///

///

///

**III.   Discussion**

Because the parties do not challenge the validity of the arbitration clause, the court decides *only* whether the dispute falls within the scope of the arbitration clause. The arbitration clause provides:

> *In the event of any disputes concerning this Agreement*, NSPF and Consultant agree to utilize a facilitated mediation process prior to initiating any formal dispute resolution process including arbitration…. In the event such mediation is unsuccessful, then such dispute shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

(ECF No. 7-2, at 3) (emphasis added). While GENESIS contends that this arbitration clause is broad in scope and covers Watershape's claims, Watershape argues the opposite. The court agrees with GENESIS.

**A.   The Scope of the Arbitration Clause**

When considering the scope of an arbitration clause, federal courts have recognized a distinction between "broad" versus "narrow" language. *Mediterranean Enters., Inc. v. Sangyong Corp.*, c, 1463–64 (9th Cir. 1983); *cf. Tracer Rsch. v. Nat'l Env't Servs.*, 42 F.3d 1292, 1295 (9th Cir. 1994). An arbitration clause is narrowly defined if it covers only those matters "arising *under*" the agreement. *Mediterranean Enters.*, 708 F.2d at 1463–64 (emphasis added). The clause is broadly defined if it applies itself to matters "*relating* to" the agreement. *Id.* (emphasis added).

If an arbitration clause refers to disputes arising "under" or "out of" the agreement, arbitration is restricted to "disputes and controversies relating to the interpretation of the contract and matters of performance." *Id.* at 1464. (citations omitted). On the other hand, phrases like "relating to" or "in connection with" reach "every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *Simula, Inc.*, 175 F.3d at 721. "To require arbitration, [the] factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are

to be resolved in favor of arbitrability." *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, at 624 n.13 (1985)).

The court finds that the language of the arbitration clause here is broad in scope. It requires the parties to arbitrate "any" disputes "concerning" the Agreement. The word "concerning" is not as restrictive as "arising under" and is synonymous with "relating to."[2] The scope of the arbitration clause is then further expanded with the modifier "any," evidencing the parties' intent to create expansive coverage.

Watershape attempts to convince the court that the arbitration clause is narrow in scope by citing a nonbinding—and distinguishable[3]—case from another district court. But Ninth Circuit precedent is clear—the arbitration clause here is broad and covers the parties' dispute. The parties' dispute clearly "touches" a matter covered by the Agreement—the intellectual property rights to works that Drakeley and Peterson may have created after signing the Agreement. And, even if this court determined that the arbitration clause is narrow and restricted to "disputes and controversies relating to the interpretation of the contract and matters of performance," the parties' dispute would still be covered.

Drakeley and Peterson signed the Agreement in 2017. (ECF No. 7, at 3). The GENESIS textbook, containing all of the alleged infringing material, was published in 2018 and contains a copyright statement. (ECF No. 7, at 4; ECF No. 7-3, at 4). Watershape does not dispute that either Drakeley or Peterson worked on the textbook before its publication. Rather, it disputes whether the work can be considered "services" or "work product" (as defined in the Agreement) covered by the "Intellectual Property" provision of the Agreement. (ECF No. 11, at 1–8).

The parties' dispute is thus one that quintessentially "arises under" the Agreement because it concerns how the Agreement must be interpreted. Watershape itself aptly recognizes

---

[2] Merriam-Webster dictionary lists "relating to" as a synonym for "concerning." Merriam–Webster Dictionary, *Concerning*, http://www.merriamwebster.com/dictionary/concerning (last visited January 18, 2024).

[3] The clause in *Entravision Communications Corp. v. BroadView Software, Inc.* dictated arbitration for disputes "concerning the *interpretation*" of the parties' agreement, whereas the arbitration clause here provides for arbitration of "any disputes concerning" the Agreement itself. No. 09-cv-4573-GHK-AJWX, 2009 WL 10675885, at *2 (C.D. Cal. Aug. 26, 2009). The district court also misstated the Ninth Circuit's holding in *Mediterranean Enterprises*.

that the parties' disagreement over intellectual property rights hinges on the "construction" of the Agreement and whether the alleged infringing works are covered by its "Intellectual Property" clause.[4]  The court therefore finds that all of Watershape's claims fall within the scope of the arbitration clause.

B.   The Appropriate Remedy

GENESIS provides the court with five different remedies after a finding that the parties' dispute is subject to arbitration.  The first is to dismiss the complaint and compel arbitration in this district, the second is to dismiss the complaint for lack of subject matter jurisdiction, the third is to dismiss the action for improper venue, the fourth is to stay the action pending arbitration, and the fifth is to transfer the action to the U.S. District Court for the District of Colorado. (ECF No. 14, at 9–10).  GENESIS then simply leaves it to the court to decide which remedy to grant. (*Id.*).

The court makes no other findings regarding the Agreement, aside from what has already been stated regarding the scope of the arbitration clause.  GENESIS's motion is properly brought as one to compel arbitration, and the court declines to analyze it under either Rule 12(b)(1) (subject matter jurisdiction)[5] or 12(b)(3) (venue)[6].

District courts have inherent authority to control their dockets, including dismissing claims, so long as they do not act in a manner that is inconsistent with a rule or statute. *Atchison,*

---

[4] "Thus, Defendants' construction of the Consulting Agreements (i.e., that the Agreements

cover the Watershape Copyrighted Works that are the subject of this action) is contrary not only to the express language of the Consulting Agreements, but is also directly contradicted by the course of the parties' dealings, their mutual understanding as reflected in various agreements, and Defendants' express representation that Messrs. Peterson and Drakeley own the intellectual property in the presentations they created." (ECF No. 11, at 8).

[5] Although the Ninth Circuit has yet to clarify the issue, other circuit courts have concluded that binding arbitration does not strip the district court of jurisdiction and a motion to compel arbitration cannot be construed as a motion to dismiss for lack of subject matter jurisdiction. *See City of Benkelman, NE v. Baseline Eng'g Corp.*, 867 F.3d 875, 881 (8th Cir. 2017*); Auto. Mech. Local 701 v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 743 (7th Cir. 2007).  This is because the question of whether the parties have contractually agreed to resolve a dispute by arbitration does not go to the issue of jurisdiction.

[6] The court makes no findings regarding the enforceability or applicability of the Agreement's choice of venue for arbitration.

*Topeka & Santa Fe Ry. Co. v. Hercules Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998).  The Ninth Circuit has held that, after a district court determines that the plaintiff's claims are subject to arbitration, it "may either stay the action or dismiss it outright."  *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073–74 (9th Cir. 2014).  The court dismisses this action.

### IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the defendants' motion to compel arbitration (ECF No. 7) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that this action be dismissed.  The clerk of the court is instructed to close this case.

DATED January 19, 2024.

UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge